IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NO: 3:16-cv-232 |
| vs. ) | |
| ) | |
| DAYTON INDUSTRIAL DRUM, INC. ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

The United States of America ("United States"), by authority of the Attorney General of the United States, acting at the request and on behalf of the United States Environmental Protection Agency ("EPA"), through the undersigned attorneys, files this Complaint and alleges as follows:

## STATEMENT OF THE CASE

1. This is a civil action brought by the United States against the above-named Defendant pursuant to Section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), as amended, 42 U.S.C. § 9607(a). The United States seeks to recover certain unreimbursed costs incurred for response activities undertaken in response to the release or threatened release of hazardous substances from facilities at and near the Lammers Barrel Superfund Site, located at the northeast corner of the intersection of Grange Hall and East Patterson roads, Beavercreek, Greene County, Ohio (hereinafter the "Site"). The United States also seeks a declaratory judgment, pursuant to CERCLA Section 113(g)(2), 42 U.S.C. § 9613(g)(2), declaring that Defendant is jointly and

severally liable for any further response costs that the United States may incur in connection with response actions that may be performed at the Site not otherwise reimbursed.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over the subject matter of this action, and the parties hereto, pursuant to Sections 113(b) and 113(e) of CERCLA, 42 U.S.C. §§ 9613(b) and 9613(e), and 28 U.S.C. §§ 1331 and 1345.

3.      Venue is proper in this District pursuant to Section 113(b) of CERCLA, 42 U.S.C. § 9613(b), and 28 U.S.C. § 1391(b) and (c), because the release or threatened release of hazardous substances that gives rise to these claims occurred in this District and because the Site is located in this District.

## DEFENDANT

4.      Defendant Dayton Industrial Drum, Inc., ("Dayton Industrial Drum") is an Ohio corporation formerly known as Lammers Barrel Corp. with its principal place of business at 1880 Radio Road, Dayton, Ohio.  Because the name change had no impact on the corporation's status or existence, the name "Dayton Industrial Drum" is used at times herein to reference the company both while it was named Dayton Industrial Drum, Inc., and while its was named Lammers Barrel Corp. ("Lammers Barrel").

## BACKGROUND ON THE SITE AND THE STATUTE

5.      The Site property occupies approximately 2.5 acres in a mixed-use commercial, industrial, and residential area located at the northeast corner of the intersection of Grange Hall and East Patterson roads in Beavercreek, Greene County, Ohio.  It is bounded to the north by an abandoned railroad right-of-way, to the east by a parking lot and public picnic area, to the south by East Patterson Road, and to the west by Grange Hall Road.  Little Beaver Creek flows from

west to east across the approximate center of the property.  The nearest residences to the Site are located approximately 400 feet to the east and southeast of the Site.

6. At times relevant to this action, there have been "releases" or "threatened releases" of "hazardous substances" at the Site—within the meaning of CERCLA Sections 101(22), 101(14), and 107(a), 42 U.S.C. §§ 9601(22), 9601(14), and 9607(a)—from facilities owned and/or operated by Dayton Industrial Drum.  These releases or threatened releases were into the environment at the Site.  More specifically, there have been releases or threatened releases of volatile organic compounds ("VOCs"), including benzene, ethyl benzene, toluene, and xylene ("BTEX"), methylene chloride, and/or chlorinated volatile organic constituents ("CVOCs"), including perchloroethene ("PCE") and trichloroethene ("TCE"), among others, in connection with Defendant's activities at the Site.  These substances are "hazardous substances," or classes of compounds that include "hazardous substances," within the meaning of CERCLA Sections 101(14) and 107(a), 42 U.S.C. §§ 9601(14) and 9607(a).

Response Activities by Plaintiff

7. Under CERCLA, EPA may take "response" actions in response to the release or threatened release of hazardous substances at and from facilities, including contaminated sites.  Such response actions may include "removal" actions, including site investigations, studies to plan and direct cleanup efforts, and various activities to prevent, minimize, or mitigate harm to public health, welfare, or the environment, as well as longer-term "remedial" actions consistent with permanent remedies that prevent or minimize releases of hazardous substances to protect present and future public health, welfare, and the environment.

8. As a result of the soil and groundwater contamination at the Site, EPA has taken various response activities in accordance with CERCLA. Those actions include, but are not limited to, the response activities described below.

9. In 1985, after finding elevated levels of vinyl chloride, a known cancer-causing chemical, as well as chloroethane, 1,2-dichloroethene, PCE, and TCE, in residential groundwater wells along East Patterson Road, EPA connected nine residences to the public water supply. Vinyl chloride and 1,2-dichloroethene are degradation products of PCE and TCE. On-Site soil, sediment, and groundwater sampling conducted from 1986 to 2000 detected VOCs, including PCE and TCE and their degradation products, as well as toluene, ethylbenzene, xylene, and metals, among other compounds. An additional four homes were connected to the public water supply in 2000 due to well contamination.

10. In 2002, EPA signed an Administrative Order on Consent ("AOC"), under which 21 potentially responsible parties ("PRPs") conducted a Remedial Investigation ("RI") and Feasibility Study ("FS") to examine the various possible means of remedying the contamination at the Site. In 2008, the AOC was amended to include an additional 20 PRPs.

11. In 2003, the Site was placed on the National Priorities List ("NPL"), set forth in 40 C.F.R. Part 300, Appendix B, by publication in the Federal Register on September 29, 2003, 68 Fed. Reg. 55,875.

12. The Site includes two Operable Units ("OU"). Operable Unit 1 ("OU-1") encompasses the Site property, including all soil and groundwater contamination within the property boundary. Operable Unit 2 ("OU-2") is the off-property plume of groundwater contamination that has migrated away from the property to the east. In September 2011, EPA issued a Record of Decision ("ROD") selecting cleanup remedies for OU-1 of the Site. The

RI/FS continues to examine the off-property groundwater contamination for OU-2, for which a remedy has not yet been selected.  The remedial action that EPA selected for OU-1 of the Site is being performed under a 2014 Remedial Design/Remedial Action Consent Decree that was entered by this court in *United States v. 3M Co., et al.*, No. 3:14-cv-00032-WHR.

Response Costs

13.CERCLA Section 107, 42 U.S.C. § 9607, authorizes the United States to recover costs that it incurs in response to the release or threatened release of hazardous substances, to the extent such costs are not inconsistent with the National Contingency Plan ("NCP"), which was promulgated under CERCLA Section 105(a), 42 U.S.C. § 9605(a), and codified at 40 C.F.R. Part 300.

14.CERCLA Section 107, 42 U.S.C. § 9607, imposes liability for such costs on certain classes of PRPs, including parties that owned or operated a facility at the time of disposal of a hazardous substance and parties that arranged for disposal or treatment of a hazardous substance at a facility owned by another party or entity.

15.EPA incurred costs in connection with response actions at the Site, including the actions described above.

16.To date, the United States has incurred more than $1.7 million in net unreimbursed response costs associated with the Site.  The costs include, but are not limited to: (i) costs associated with the remedial investigation and feasibility study for the Site; (ii) costs of other actions to monitor, access, and evaluate the release or threatened release of hazardous substances at the Site; (iii) costs of overseeing response activities at the Site; and (iv) costs of enforcement activities relating to the Site.

17. The above-referenced response costs incurred by the United States qualify as costs of "response" and "costs of removal or remedial action incurred by the United States Government" under CERCLA Sections 101(25) and 107(a)(4)(A), 42 U.S.C. §§ 9601(25) and 9607(a)(4)(A).

18. The above-described response costs were incurred by the United States in a manner not inconsistent with the NCP.

19. The United States will continue to incur response costs associated with the Site.

20. Certain past response costs incurred by the United States have been paid under partial settlements or other arrangements with the PRPs at the Site. The amount of unreimbursed costs referenced above incorporates full credit for all cost reimbursements already paid by PRPs, including the cost reimbursement payments to the United States under the Consent Decree in *United States v. 3M Co., et al.* As required by Subparagraph 50.b and Appendix G of that Consent Decree, $857,303.21 in proceeds paid under that settlement has not been applied to reduce EPA's unreimbursed past costs because EPA was required to deposit that amount in a Superfund Special Account for use in defraying expected future costs of remedial design and remedial action activities for the off-property plume of groundwater contamination designated as OU-2 of the Site.

21. The amounts recoverable in an action under CERCLA Section 107(a)(4)(A), 42 U.S.C. § 9607(a)(4)(A), include statutory prejudgment interest on the response costs. Such interest accrues from the later of: (i) the date that payment of a specified amount is demanded in writing; or (ii) the date of the expenditure concerned.

22. The United States made a written demand for payment of a specified amount of unreimbursed response costs in a May 4, 2012, correspondence addressed to a representative of Dayton Industrial Drum, Inc.

**GENERAL ALLEGATIONS AND ALLEGATIONS RELATING TO DEFENDANT**

23. Dayton Industrial Drum is a "person" within the meaning of Section 101(21) of CERCLA, 42 U.S.C. § 9601(21).

24. Each building, structure, installation, piece of equipment, and pipe referenced in paragraphs 28 to 43, below, is a "facility" within the meaning of CERCLA Sections 101(9) and 107(a), 42 U.S.C. §§ 9601(9) and 9607(a), including the facilities used by Lammers Barrel.

25. Each barrel, container, and pit container referenced in paragraphs 28 to 43, below, is a "facility" within the meaning of CERCLA Sections 101(9) and 107(a), 42 U.S.C. §§ 9601(9) and 9607(a).

26. The Site property is a "facility" within the meaning of Sections 101(9) and 107(a) of CERCLA, 42 U.S.C. §§ 9601(9) and 9607(a), because it is a site or area where a hazardous substance has been deposited, stored, disposed of, placed, or otherwise come to be located.

27. There have been "releases" or "threatened releases" of "hazardous substances" at and from these "facilities."

<u>Dayton Industrial Drum, Inc.</u>

28. Defendant Dayton Industrial Drum, formerly known as Lammers Barrel, operated a barrel-reconditioning facility at the Site from approximately 1955 to 1964.

29. In 1955, Lammers Barrel Corp. was incorporated in the State of Ohio and began operating a barrel-reconditioning business at the Site.

30. Until approximately 1964, Lammers Barrel acquired barrels from various businesses to clean and recondition these barrels at the Site.

31. Lammers Barrel took ownership of many of these barrels when it accepted them.

32. The barrels often contained various residual waste oils, solvents, and other chemicals, including hazardous substances.

33. The barrels, some of which were rusty and occasionally seeped, were stored on Site before being cleaned and reconditioned.

34. As part of the reconditioning process, any residual waste oils, solvents, and other chemicals remaining inside the barrels would be dumped into an initial drain pit that flowed into an underground septic tank at the Site.

35. In addition, a rinse made of caustic soda and water was used to further remove any residual waste oils, solvents, and other chemicals remaining inside the barrels, after which this waste-containing rinse water drained into a different septic tank that drained into a broken-concrete leach field at the Site.

36. Lammers Barrel conducted many of its barrel storage, reconditioning, and waste disposal operations using buildings, structures, and equipment located at the Site.

37. Through the barrel storage and reconditioning process, hazardous substances were discharged, deposited, dumped, leaked, or spilled at the Site, seeped into Site soils, and leached into the groundwater underneath the Site.

38. In approximately 1964, Lammers Barrel relocated to 1880 Radio Road, Dayton, Ohio.

39. In 1972, Lammers Barrel Corp. amended its Articles of Incorporation to change its name to Dayton Industrial Drum, Inc.

40. Dayton Industrial Drum is a person that owned and operated facilities at the time of disposal of hazardous substances at and from those facilities, and at and from the Site property.

41. There were releases of hazardous substances, or threatened releases of hazardous substances at and from those facilities, and at and from the Site property, which caused the incurrence of response costs within the meaning of CERCLA Section 107(a), 42 U.S.C. § 9607(a).

42. Dayton Industrial Drum is therefore a past "owner" and "operator" at the time of disposal—within the meaning of CERCLA Sections 101(20) and 107(a)(2), 42 U.S.C. §§ 9601(20) and 9607(a)(2)—of facilities located at the Site property.

43. In light of the foregoing, Dayton Industrial Drum is liable to Plaintiff in this action under CERCLA Section 107(a)(2), 42 U.S.C.§ 9607(a)(2).

### FIRST CLAIM FOR RELIEF
### (Cost Recovery by the United States under CERCLA Section 107, 42 U.S.C. § 9607)

44. Paragraphs 1 to 43 are realleged and incorporated herein by reference.

45. Pursuant to CERCLA Section 107(a), 42 U.S.C. § 9607(a), Defendant Dayton Industrial Drum is jointly and severally liable to the United States for all unreimbursed response costs incurred by the United States in connection with the Site not otherwise reimbursed, including enforcement costs and prejudgment interest on such costs.

### SECOND CLAIM FOR RELIEF
### (Declaratory Judgment for Recovery of Further Response Costs by the United States)

46. Paragraphs 1 to 43 are realleged and incorporated herein by reference.

47. Pursuant to CERCLA Section 113(g)(2), 42 U.S.C. § 9613(g)(2), Defendant Dayton Industrial Drum is jointly and severally liable to the United States for any unreimbursed further response costs that the United States incurs in connection with the Site, not inconsistent with the NCP.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, the United States of America, respectfully requests that the Court:

A. Enter judgment in favor of the United States and against the above-named Defendant, pursuant to CERCLA Section 107(a), 42 U.S.C. § 9607(a), that Defendant Dayton Industrial Drum is jointly and severally liable for all response costs incurred by the United States at or in connection with response activities at the Site not otherwise reimbursed, including prejudgment interest on such costs; and

B. Enter a declaratory judgment in favor of the United States against the above-named Defendant, pursuant to CERCLA Section 113(g)(2), 42 U.S.C. § 9613(g)(2), that Defendant Dayton Industrial Drum is jointly and severally liable for any unreimbursed further response costs incurred by the United States in connection with the Site, not inconsistent with the NCP;

C. Award the United States its costs of this action; and

D. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

FOR THE UNITED STATES

THOMAS A. MARIANI, JR.
Deputy Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice

s/ *Ashleigh G. Morris*
ASHLEIGH G. MORRIS
Environmental Enforcement Section
U.S. Department of Justice
P.O. Box 7611
Washington, D.C.  20044
(202) 616-8834
Ashleigh.Morris@usdoj.gov

STEVEN J. WILLEY (Ohio 0025361)
Environmental Enforcement Section
U.S. Department of Justice
P.O. Box 7611
Washington, D.C.  20044
(202) 514-2807
Steven.Willey@usdoj.gov


BENJAMIN C. GLASSMAN
Acting United States Attorney
Southern District of Ohio

GREGORY P. DUNSKY (Ohio 0009098)
Assistant United States Attorney
Southern District of Ohio
200 West Second Street
Dayton, Ohio 45402
(937) 225-2910
Gregory.Dunsky@usdoj.gov

Of Counsel:
MARIA GONZALEZ
Associate Regional Counsel
U.S. Environmental Protection Agency - Region 5
77 W. Jackson Blvd. (C-14J)
Chicago, Illinois  60604